1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALI FOROUTAN,                                  ) Case No.: 5:10-cv-02411-LHK
                                               )
                          Petitioner,          ) ORDER DENYING PETITION FOR
        v.                                     ) WRIT OF HABEAS CORPUS
                                               )
DOMINGO URIBE, JR., Warden,                    )
                                               )
                          Respondent.          )
                                               )
_____  )

        Petitioner Ali Foroutan ("Petitioner" or "Foroutan"), a state prisoner in the custody of

Domingo Uribe, Jr. ("Respondent"), Warden of California State Prison, Centinela, in Imperial,

California, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

argues that his indeterminate life sentence with a mandatory minimum of 25 years, imposed under

California's "Three Strikes" law after Petitioner was convicted of possessing 0.03 grams of

methamphetamine, is grossly disproportionate to his crime in violation of the Eighth Amendment.

The Court held a hearing on the Petition on February 9, 2012, and has considered the parties'

arguments and submission and the relevant law.  Although this is a close case, the Court is unable

to conclude that Petitioner's sentence is the "exceedingly rare," "extreme," and "extraordinary

case" for which "[t]he gross disproportionality principle reserves a constitutional violation."

*Lockyer v. Andrade*, 538 U.S. 63, 73, 77 (2003).  Accordingly, the Petition for Writ of Habeas

Corpus is DENIED.

# I.   FACTS AND PROCEDURAL BACKGROUND[1]

## A.  Petitioner's Criminal History

### 1.   Triggering of Offense

In April 2002, a jury convicted Petitioner in Marin County Superior Court of felony possession of 0.03 grams of methamphetamine, a usable quantity.  *See* Cal. Health & Safety Code § 11377 (West).[2]  The charges arose from a residential burglary on June 8, 2000, for which Foroutan was a suspect.  CT 20-21.  Several days after the reported burglary, police officers located Petitioner in a Travelodge motel room with his girlfriend.  Petitioner was found with a "small baggie with white powder in it," a glass pipe, and a small butane torch in his girlfriend's purse.  Lab testing confirmed that the powder contained methamphetamine, and the lab supervisor testified that the powder weighed 0.03 grams and that 0.03 grams is a usable quantity of methamphetamine.  CT 22-23.

After Petitioner waived his right to a jury trial on his prior convictions, as alleged under Penal Code § 1170.12 (the "Three Strikes" law), the court found to be true allegations that Foroutan had been convicted of two prior felony first degree burglaries, one in 1989 and one in

---

[1] The Court's recitation of the facts is based on documents lodged with the Court in connection with Respondent's Answer to the Order to Show Cause, ECF No. 9.  Exhibit 1 is the State Court 2002 Clerk's Transcript; Exhibit 2 is the State Court 2002 Reporter's Transcript; Exhibit 3 is the Marin County Probation Officer's Presentence Report, dated November 8, 2002; Exhibit 4 is the Unpublished Opinion of the California Court of Appeal, *People v. Foroutan*, A101159 (Cal. Ct. App. Jan. 26, 2005); Exhibit 6 is the State Court 2007 Clerk's Transcript; Exhibit 7 is the State Court 2007 Reporter's Transcript; Exhibit 8 is the Appellant's Opening Brief in Case No. A118978 before the California Court of Appeal; Exhibit 9 is the Respondent's Brief in Case No. A118978; Exhibit 10 is Appellant's Reply Brief in Case No. A118978; Exhibit 11 is the Unpublished Opinion of the California Court of Appeal, *People v. Foroutan*, A118978 (Cal. Ct. App. Feb. 4, 2009); Exhibit 12 is the Petition for Review filed in the California Supreme Court; and Exhibit 13 is the California Supreme Court's Order Denying Petition for Review.  All record citations are to the 2007 Clerk's Transcript ("CT"), unless otherwise indicated.

[2] Under California law, possession of this quantity of methamphetamine is a "wobbler" – that is, the decision to prosecute this offense as a misdemeanor or as a felony is a matter of prosecutorial discretion.  *See* Cal. Health & Safety Code § 11377(a).  Here, the prosecutor chose to prosecute this offense as a felony.  Petitioner was also originally charged with and convicted of using an access card without consent of the cardholder or issuer in violation of California Penal Code § 484g(a), but the California Court of Appeals reversed the access card conviction in January 2005 on grounds that the trial court's failure to give a unanimity instruction was prejudicial error.  *See* Ex. 4 at 14.  On remand, the District Attorney subsequently moved to dismiss the misuse of an access card charge "in furtherance of justice."  2007 Clerk's Transcript ("CT") 38.

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1992.  CT 20; Ex. 11 at 2.  Those crimes qualify as "serious" crimes under the Three Strikes law.  *See* Cal. Penal Code § 1192.7(c) (listing "serious" felonies").  Pursuant to California's Three Strikes law, Petitioner was sentenced to a term of 25 years to life in prison.[3]  Ex. 11 at 2; *see* Cal. Pen. Code § 667(e)(2)(A) (West 1999).

## 2. Prior Strikes

In 1989, Petitioner pled guilty to three counts of felony residential burglary, Cal. Pen. Code § 459, in exchange for the dismissal of three other burglary and attempted burglary charges pursuant to a *Harvey* waiver,[4] and an agreement from the prosecutor not to charge two other burglaries.  2007 CT 90-92.  According to the 1990 Presentence Report and Recommendation, in the first burglary count, Petitioner entered through an unlocked kitchen window, ransacked the master bedroom, and took $18,000 in jewelry.  The victim reported a total loss of over $20,000.  CT 103.  In the second count, Petitioner kicked in the front door and took approximately eighteen handguns and rifles, as well as tens of thousands of dollars worth of gold, jewelry, furs, electronics, and golf clubs.  CT 104.  The victim claimed a total loss of $103,297.00.  In the third count, Petitioner again kicked in the door of a house, ransacked the bedrooms, and removed cash and

[3] California's Three Strikes law consists of two similar statutory schemes "designed to increase the prison terms of repeat felons."  *People v. Superior Court of San Diego Cnty. ex rel. Romero*, 13 Cal. 4th 497, 504 (1996).  When a defendant is convicted of a felony and found to have previously been convicted of one or more prior felonies defined as "serious" or "violent" in Cal. Pen. Code Ann. §§ 667.5 and 1192.7 (West Supp. 2002), sentencing is conducted pursuant to the Three Strikes law.  If the defendant has one prior "serious" or "violent" felony conviction, he must be sentenced to "twice the term otherwise provided as punishment for the current felony conviction."  Cal. Pen. Code Ann. § 667(e)(1) (West 1999); *id.* § 1170.12(c)(1) (West Supp. 2002).  If the defendant has two or more prior "serious" or "violent" felony convictions, he must receive "an indeterminate term of life imprisonment."  *Id.* § 667(e)(2)(A) (West 1999); *id.* § 1170.12(c)(2)(A) (West Supp. 2002).  Defendants sentenced to life under the Three Strikes law become eligible for parole on a date calculated by reference to a "minimum term," which is the greater of (a) three times the term otherwise provided for the current conviction; (b) 25 years; or (c) the term determined by the court pursuant to § 1170 for the underlying conviction, including any enhancements.  *Id.* §§ 667(e)(2)(A)(i)-(iii) (West 1999); *id.* §§ 1170.12(c)(2)(A)(i)-(iii) (West Supp. 2002).

[4] *People v. Harvey*, 25 Cal. 3d 754 (1979).  In *Harvey*, the court concluded that facts of dismissed charges that are "transactionally related" to the admitted charge may be relied upon in sentencing, but held that "facts underlying, and solely pertaining to" dismissed counts cannot be relied upon "absen[t] . . . any contrary agreement."  *Id.* at 758.  A "*Harvey* waiver" is such a "contrary agreement" allowing the sentencing court to take account of the facts of the dismissed counts for purposes of sentencing.

3

jewelry.  The victim claimed a total loss of $3,745.00.  CT 104-05.  In addition to these three

counts to which Petitioner pled guilty, the victims of the three counts dismissed with a *Harvey*

waiver claimed a total loss of $5,274.00.  Two of those burglaries also revealed signs of heavy

ransacking.  CT 105.  Petitioner admitted that he had developed a serious drug problem and stated,

"I turned to ste[a]ling to support my habit.  Finally my drug addiction got to a point that I would

ste[a]l anything to stay high."  CT 106.  For the three counts of felony residential burglary to which

Petitioner pled guilty, Petitioner was denied probation and sentenced to prison for 8 years, 6

months.  However, criminal proceedings were suspended pursuant to California Welfare &

Institutions Code § 3051, and on March 14, 1990, Petitioner was committed to the California

Rehabilitation Center.  Ex. 3 at 5; Ex. 5 at 1.  Due to his immigration status, however, Petitioner

was discharged from the program on July 11, 1990, and criminal proceedings were reinstated on

October 19, 1990.  The previously imposed state sentence was vacated, and Petitioner was granted

five years supervised probation.  Ex. 5 at 1-2; *see* CT 88; Ex. 3 at 3.

        In July 1992, probation was revoked when Petitioner pled guilty to one count of residential

burglary, and admitted the prior burglary conviction.  Petitioner was sentenced to nine years in

state prison.  Ex. 5 at 2.  For violating his probation, he was sentenced to a term of eight years and

eight months, to run concurrently with the nine year sentence imposed for the burglary.  Ex. 5 at 1-

2.  Petitioner served five years and was paroled in 1997, but he violated parole in 1999 when he

committed the crimes underlying his current conviction.  Ex. 3 at 3-4; Ex. 5 at 2.

### 3.   Other Criminal History

        In addition to these prior felony convictions, Petitioner also has a history of juvenile

offenses and misdemeanor convictions.  He was declared a ward of the state in 1984 when he

committed his first burglary at the age of 16, in which the victim claimed a loss of over $50,000.

CT 85, 113; Ex. 3 at 3.  He was also booked for several other offenses between October 1984 and

October 1986, including driving his father's car without permission, driving a vehicle in which

drug paraphernalia was found, and stealing an item valued at $5.95 from a Safeway Market.  CT

107-08; Ex. 3 at 3.  Petitioner also had a few run-ins with the law as an adult, prior to his first

felony "strike" in 1989 residential burglary.  Between 1987 and 1991, Petitioner pled guilty to

4

1  misdemeanor theft, was convicted of misidentifying himself to a police officer, and was convicted

2  of a hit and run resulting in death or injury.  CT 88.  Petitioner was not incarcerated for any of

3  these offenses, but rather was either fined or sentenced to probation and community service.  CT

4  88.

5  **B.  Procedural History**

6  After trial, Petitioner moved, without success, to dismiss the prior convictions and to reduce

7  his felony possession of methamphetamine conviction to a misdemeanor.  Ex. 11 at 2.  In 2007, at

8  the resentencing after the California Court of Appeals struck the access card violation, Petitioner

9  again moved to strike his two previous convictions and to reduce his felony possession conviction

10  to a misdemeanor.  *Id.*  The trial court denied his motion, and his sentence was upheld.  *Id.*

11  In 2009, Foroutan brought a direct appeal to the California Court of Appeal challenging his

12  Three Strikes sentence, in part, on grounds that: (1) the trial court abused its discretion by failing to

13  strike one of his prior convictions, and (2) his indeterminate life sentence amounts to cruel and/or

14  unusual punishment in violation of the U.S. and California Constitutions.  *See* U.S. Const. amend.

15  VIII (prohibiting cruel and unusual punishment); Cal. Const., art. I, § 17 (prohibiting cruel or

16  unusual punishment).  The Court of Appeal affirmed the trial court's denial of Foroutan's motion

17  to strike a prior conviction, observing that:

18  At the time of Foroutan's first residential burglary conviction for three counts of
   burglary, he admitted that he committed these offenses during a time in his life
19  when he was using drugs.  Placed on probation for this offense, he continued to
   abuse drugs.  His more recent conviction for possession of methamphetamine
20  suggests that the same drug abuse that led him to commit one or more burglaries a
   decade earlier was still at work in his life in 2000.  Foroutan's drug abuse, his lack
21  of success after participating in a residential treatment program and his poor
   performance on probation in the past suggest that he falls within the spirit of the
22  Three Strikes sentencing scheme.

23
   Foroutan argues that the trial court improperly focused on his prior residential
24  burglary convictions alone -- ignoring the current offense of possession of
   methamphetamine -- when denying his motion to strike those prior convictions.  We
25  disagree with his assessment of the facts.  When it denied his motion to strike his
   prior convictions, the trial court mentioned *both* his methamphetamine use -- an
26  implied reference to his possession of a useable amount of methamphetamine -- and
   his prior residential burglary convictions.
27

28

**United States District Court**
For the Northern District of California

Ex. 11 at 5-6 (internal citations omitted).  The Court of Appeal rejected Foroutan's argument that

"his prior residential burglary convictions are less culpable than other strikes because neither was a

violent offense," explaining that "[t]his argument ignores the intent of the Three Strikes law to

punish *both* those who have suffered prior convictions for serious offenses such as residential

burglary and those who have repeatedly committed violent offenses in the past."  Ex. 11 at 5 n.4.

The Court of Appeal also rejected Petitioner's claim that his sentence constitutes cruel

and/or unusual punishment within the meaning of the federal and state bans on such punishment.

*See* U.S. Const. amend. VIII; Cal. Const. art. I, § 17.  In rejecting Petitioner's Eighth Amendment

claim, the Court of Appeal reasoned:

> A punishment that is grossly disproportionate to the severity of the crime violates
> the Eighth Amendment.  However, it is exceptionally rare for a noncapital
> punishment to fail the federal proportionality test.  *Ewing* [*v. California*, 538 U.S.
> 11, 19, 21 (2003)] (plurality opinion); *see Rummel* [*v. Estelle*, 445 U.S. 263, 271-72
> (1980)].  The United States Supreme Court has consistently upheld mandatory
> sentencing schemes for habitual offenders, including California's Three Strikes law.
> *See Lockyer* [*v. Andrade*, 538 U.S. 63, 77 (2003)]; *see also Ewing*, 538 U.S. at 30-
> 31 (plurality opinion); *Harmelin* [*v. Michigan*, 501 U.S. 957, 994-95 (1991)];
> *Rummel*, 445 U.S. at 284; *Spencer v. Texas*, 385 U.S. 554, 567-69 (1967).  It
> routinely upholds lengthy sentences for less serious offenses.  *See Lockyer*, 538 U.S.
> at 72-77 (upholding two consecutive 25 years to life terms following third strike
> petty theft conviction); *see also Ewing*, 538 U.S. at 20-31 (plurality opinion)
> (upholding 25 years to life sentence under Three Strikes law for theft of three golf
> clubs).  Thus, we conclude that Foroutan's sentence will pass Eighth Amendment
> muster as long as it was correctly imposed pursuant to our state's Penal Code.

Ex. 11 at 8-9 (internal citations altered to conform to federal Bluebook guidelines).  The Court of

Appeal noted that Foroutan's sentence was properly calculated according to the terms of the 2000

California Penal Code.  Ex. 11 at 9-10 n.7.  The Court of Appeal also expressly rejected Foroutan's

argument that the trial court was required to conduct a three-pronged analysis as used in *Solem v.*

*Helm*, 463 U.S. 277, 292 (1983):

> More recently, the United States Supreme Court rejected the notion that the Eighth
> Amendment requires strict proportionality between crime and sentence, finding
> instead that it only forbids extreme sentences that are grossly disproportionate to the
> crime.  In most cases, it will be unnecessary to compare punishments within and
> without the jurisdiction; consideration of the gravity of the offense and the
> harshness of the penalty alone will usually be sufficient to uphold a sentence.  *See*
> *Harmelin*, 501 U.S. at 1001, 1004-05 (Kennedy, J., concurring in part and

6

1    concurring in judgment) (three-[Justice] concurring opinion; two other [Justices]
2    would have overruled *Solem*, rejecting its three-pronged analysis); *People v. Cartwright*, 39 Cal. App. 4th 1123, 1135 (1995).

3    Ex. 11 at 8-9 n.6 (internal citations altered to conform to federal Bluebook guidelines).

4          Finally, in rejecting Foroutan's cruel or unusual punishment claim under the California

5    Constitution, the Court of Appeal wrote:

6          [Foroutan] reasons that his possession offense is extremely minor with little impact
7          on society.  He urges us to view his prior convictions as nonviolent, remote in time
           and unconnected to his current conviction for possession of methamphetamine.  He
8          contends that he poses no threat to society.  We disagree with Foroutan's assessment
           of the underlying facts.  We find a drug-related connection between the current
9          offense for possession of methamphetamine and his prior convictions for burglaries
           committed during a time when drugs held a significant sway over his life.  Foroutan
10         also discounts the significant societal consequences of the personal use of illegal
           drugs.  *See Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and
11         concurring in judgment).  His sentence for the offenses of which he has been
           convicted -- in 2000 and before -- does not shock the conscience within the meaning
12         of the first prong of the [*In re Lynch*, 8 Cal. 3d 410 (1972)] analysis.

13   Ex. 11 at 10-11 (internal citations altered to conform to federal Bluebook guidelines).

14         Foroutan petitioned for review in the California Supreme Court, which summarily denied

15   his petition on May 13, 2009.  Ex. 13.  Having exhausted his claim in state court, Petitioner filed

16   the instant petition in federal court on June 1, 2010.

17   **II.  STANDARD OF REVIEW**

18         The instant petition was filed after April 24, 1996, and is therefore governed by the

19   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat.

20   1214.  AEDPA imposed significant restrictions on the power of federal courts to grant writs of

21   habeas corpus to state prisoners by heavily circumscribing the scope of a federal habeas court's

22   review of a state court decision.  *See Williams v. Taylor*, 529 U.S. 362, 399 (2000) (O'Connor, J.,

23   concurring in part and concurring in judgment).  The relevant state court decision under review "is

24   the 'last reasoned decision' addressing a claim."  *Hurles v. Ryan*, 650 F.3d 1301, 1311 (9th Cir.

25   2011) (quoting *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005)).  Because the California

26   Supreme Court summarily denied Petitioner's appeal on his Eighth Amendment claim without

27   comment, the Court "'look[s] through' that opinion to the last reasoned decision," which here is the

28

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**United States District Court**
For the Northern District of California

decision of the California Court of Appeal. *Id.* (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991)).

Under AEDPA, a federal habeas court may grant a habeas petition only if the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The "contrary to" and "unreasonable application" clauses have independent meaning. *Williams*, 529 U.S. at 405. "A state court's decision is contrary to clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result." *Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004) (citing *Williams*, 529 U.S. at 405-06). A state court decision involves an "unreasonable application" of clearly established precedent if it (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

A federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application of the law must be "objectively unreasonable" to support granting the writ. *Lockyer*, 538 U.S. at 75 (holding that the Ninth Circuit erred by "conflating error (even clear error) with unreasonableness"). "[I]f habeas relief depends upon the resolution of 'an open question in [Supreme Court] jurisprudence,' § 2254(d)(1) precludes relief." *Crater v. Galaza*, 491 F.3d 1119, 1123 (9th Cir. 2007) (quoting *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006)). In short, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents," but "goes no farther." *Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 786 (2011). A petitioner seeking habeas relief must show that the state

United States District Court
For the Northern District of California

court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *see James v. Schriro*, 659 F.3d 855, 875 (9th Cir. 2011).

## III.  DISCUSSION

Petitioner raises only one claim: that his life sentence violates his Eighth Amendment right against cruel and unusual punishment, and that the state court of appeal's decision affirming the sentence is contrary to and an unreasonable application of clearly established Supreme Court law.

### A.  Clearly Established Eighth Amendment Law[5]

A federal habeas court's first task is to identify "'the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (quoting *Lockyer*, 538 U.S. at 71-72).  The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *accord Carey*, 549 U.S. at 74.  While only Supreme Court holdings comprise "clearly established" federal law for purposes of AEDPA habeas review, "circuit court precedent may be 'persuasive' in demonstrating what law is 'clearly established' and whether a state court applied that law unreasonably." *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010) (quoting *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003)).

The Eighth Amendment, which applies to states through the Due Process Clause of the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem*, 463 U.S. at 284; *see also Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) ("The concept of proportionality is central to the Eighth

---

[5] *Fryman v. Duncan*, No. 05-0156, 2010 WL 145010, at *5-8 (N.D. Cal. Jan. 8, 2010) (Patel, J.), provides a comprehensive overview of the relevant Supreme Court and Ninth Circuit authority on Eighth Amendment challenges to non-capital sentences imposed under recidivist sentencing schemes.

9

United States District Court
For the Northern District of California

1    Amendment."); *Weems v. United States*, 217 U.S. 349, 367 (1910) (holding it is a "precept of

2    justice that punishment for crime should be graduated and proportioned to [the] offense"). The

3    Eighth Amendment's proportionality principle, however, is a narrow one, and though it applies to

4    noncapital as well as capital sentences, "strict proportionality between crime and sentence" is not

5    required. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and

6    concurring in judgment). "Rather, [the Eighth Amendment] forbids only extreme sentences that

7    are 'grossly disproportionate' to the crime." *Id.* (quoting *Solem*, 463 U.S. at 288). Furthermore,

8    "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures

9    necessarily possess in determining the types and limits of punishments for crimes, as well as to the

10   discretion that trial courts possess in sentencing convicted criminals." *Solem*, 463 U.S. at 290;

11   *accord Harmelin*, 501 U.S. at 959 (Kennedy, J., concurring in part and concurring in judgment).

12   As a matter of practice, "[o]utside the context of capital punishment, successful challenges to the

13   proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S.

14   263, 272 (1980); *but see Solem*, 463 U.S. at 303 (holding that a sentence of life imprisonment

15   without possibility of parole was "grossly disproportionate" to the crime of recidivism based on

16   seven underlying nonviolent felonies); *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008) (holding

17   a 25 years to life sentence imposed under California's Three Strikes law grossly disproportionate);

18   *Ramirez*, 365 F.3d at 775; *Banyard v. Duncan*, 342 F. Supp. 2d 865 (C.D. Cal. 2004) (same).

19            Although it was clearly established at the time the state court's decision became final that

20   "[a] gross disproportionality principle is applicable to sentences for terms of years," *Lockyer*, 538

21   U.S. at 72, "the details [were] not," *Gonzalez*, 551 F.3d at 882. Reflecting on its own past cases,

22   the Supreme Court explained in *Lockyer*, "our precedents in this area [of the Eighth Amendment]

23   have not been a model of clarity. Indeed, in determining whether a particular sentence for a term

24   of years can violate the Eighth Amendment, we have not established a clear or consistent path for

25   courts to follow." *Lockyer*, 538 U.S. at 72. A brief review of the Supreme Court's most relevant

26   decisions follows.

27            In *Rummel v. Estelle*, the Supreme Court upheld the imposition of a life sentence with the

28   possibility of parole after 12 years under a Texas recidivist sentencing statute. Rummel's

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1    triggering offense was a felony for obtaining $120.75 by false pretenses, and his prior felony

2    convictions were for fraudulently using a credit card to obtain $80 worth of goods or services and

3    for passing a forged check in the amount of $28.36.  445 U.S. at 265-66.

4    In *Solem v. Helm*, the Supreme Court invalidated a life sentence without the possibility of

5    parole imposed under South Dakota's recidivist sentencing statute, holding it grossly

6    disproportionate to the triggering offense of uttering a "no account" check for $100, where the

7    petitioner's criminal history consisted of three prior third-degree burglary convictions, as well as

8    single convictions for obtaining money under false pretenses, grand larceny, and third-offense

9    driving while intoxicated.  463 U.S. at 281-82.  The Court announced that "a court's

10   proportionality analysis under the Eighth Amendment should be guided by objective criteria,

11   including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed

12   on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the

13   same crime in other jurisdictions."  *Id.* at 292.

14   In *Harmelin v. Michigan*, the Supreme Court upheld a life sentence without the possibility

15   of parole for possession of more than 650 grams of cocaine.  501 U.S. at 961, 996.  Although the

16   Court did not produce a majority opinion with respect to the general principles of gross

17   disproportionality review, seven members of the Court agreed that the Eighth Amendment contains

18   a gross disproportionality principle in some form.  *See id.* at 996-97 (Kennedy, J., concurring in

19   part and concurring in the judgment); *id.* at 1009 (White, J., dissenting); *id.* at 1027 (Marshall, J.,

20   dissenting).  Justice Kennedy's concurring opinion, which is considered controlling on the question

21   of gross disproportionality review,[6] established the rule that the Eighth Amendment "does not

22   require strict proportionality between crime and sentence," but rather "forbids only extreme

23   sentences that are 'grossly disproportionate' to the crime."  *Id.* at 1001 (Kennedy, J., concurring in

---

[6] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)); *Gonzalez*, 551 F.3d at 881 (noting that Justice Kennedy's opinion "represented the narrowest view of a majority of the Court on the question of gross disproportionality review"); *see also Taylor v. Lewis*, 460 F.3d 1093, 1098 n.5 (9th Cir. 2006); *United States v. Bland*, 961 F.2d 123, 128-29 (9th Cir. 1992).

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**United States District Court**
For the Northern District of California

1     part and concurring in judgment) (quoting *Solem*, 463 U.S. at 288, 303).  After explaining that

2     *Solem* "did not announce a rigid three-part test," *id.* at 1004, Justice Kennedy held that

3     "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a

4     threshold comparison of the crime committed and the sentence imposed leads to an inference of

5     gross disproportionality," *id.* at 1005.

6          Next, in *Ewing v. California*, the Court upheld a sentence of 25 years to life imprisonment

7     imposed under California's Three Strikes law for felony grand theft of personal property

8     (shoplifting three golf clubs) in excess of $400, where the petitioner's prior convictions included

9     three counts of theft, one count of grand theft auto, one count of battery, four counts of burglary,

10    one count of possession of drug paraphernalia, one count of unlawful possession of a firearm, at

11    least one count of trespassing, and one count of robbery.  538 U.S. at 18-19, 30-31.  Again, while

12    there was no majority opinion, Justice O'Connor's opinion represents the narrowest basis for the

13    Court's decisions and is thus considered controlling.  *See Marks*, 430 U.S. at 193; *Gonzales*, 551

14    F.3d at 881-82.  The Court reasoned that, "[e]ven standing alone, Ewing's theft should not be taken

15    lightly.  His crime was certainly not 'one of the most passive felonies a person could commit.'"

16    *Ewing*, 538 U.S. at 28 (quoting *Solem*, 463 U.S. at 296).  The Court also rejected Ewing's

17    argument that his felony was less serious because grand theft is a "wobbler" under California law,

18    explaining that "[t]hough California courts have discretion to reduce a felony grand theft charge to

19    a misdemeanor, it remains a felony for all purposes 'unless and until the trial court imposes a

20    misdemeanor sentence.'"  *Id.* at 28-29 (quoting *In re Anderson*, 69 Cal. 2d 613, 626 (1968)

21    (Tobriner, J., concurring)).  Finally, the Court held that Ewing's sentence "reflects a rational

22    legislative judgment, entitled to deference, that offenders who have committed serious or violent

23    felonies and who continue to commit felonies must be incapacitated."  *Id.* at 30.

24          In *Ewing*'s companion case, *Lockyer v. Andrade*, the Supreme Court upheld another

25    California Three Strikes sentence of two consecutive sentences of 25 years to life imprisonment

26    imposed for two petty theft convictions arising from the theft of $153.54 worth of videotapes,

27    where the petitioner's prior convictions included two counts of misdemeanor theft, at least three

28    counts of residential burglary, and two counts of transportation of marijuana.  538 U.S. at 66-67.

12

The Court acknowledged that "[o]ur cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality," and clarified that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 72-73 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment); *see Norris v. Morgan*, 622 F.3d 1276, 1286 (9th Cir. 2010); *Gonzales*, 551 F.3d at 882. The Court "declined to clarify the 'gross disproportionality' standard, leaving us with a principle, but no explanation." *Gonzales*, 551 F.3d at 882.

That the "gross disproportionality principle" was the only clearly established law, however, does not mean there was no clearly established content to that principle. *See Norris*, 622 F.3d at 1287 ("The gross disproportionality principle necessarily has a core of clearly established meaning; a principle with no substance is no principle at all."). While there was no prevailing methodology for conducting gross disproportionality analysis at the time the Court of Appeal's decision in this case became final, there were several clearly established principles informing the content of a gross disproportionality analysis. As the Ninth Circuit explained in *Norris*, the Supreme Court has consistently given meaning to the gross disproportionality principle by: (1) "measuring the relationship between the severity of the punishment inflicted upon the offender and the nature and number of offenses committed;" and (2) referring to "objective factors to the maximum possible extent instead of relying on subjective views regarding the fit between the offenses and the punishment." *Id.* (internal quotation marks, citations, and alterations omitted). "Accordingly, at the very least, it was clearly established at the time the state court decision in this case became final that in applying [the] gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed." *Id.*

## B. AEDPA

Having determined the relevant Supreme Court authority clearly established at the time the Court of Appeal's decision became final, this Court turns now to the specific circumstances of Petitioner's case, and considers whether the Court of Appeal's decision was "contrary to, or

13

1    involved an unreasonable application of," the proportionality principle in concluding that

2    Foroutan's sentence was not grossly disproportionate in violation of the Eighth Amendment.

3    Under AEDPA, "[i]t is not enough that a federal habeas court, in its independent review of the

4    legal question, is left with a firm conviction that the state court was erroneous." *Lockyer*, 538 U.S.

5    at 75 (internal quotation marks and citations omitted).  Rather, the Court must further determine

6    whether the state court proceedings "resulted in a decision that was contrary to, or involved an

7    unreasonable application of, clearly established Federal law, as determined by the Supreme Court

8    of the United States."  28 U.S.C. § 2254(d)(1).

9                     **1.    "Contrary to"**

10         Foroutan suggests two reasons why the Court of Appeal's decision was contrary to clearly

11   established Supreme Court law.  First, he argues that the facts of his case are materially

12   indistinguishable from the facts in *Solem*, where the Supreme Court held unconstitutional a

13   sentence of life imprisonment without parole for a seven-time nonviolent felon.  Reply at 7; *see*

14   *Solem*, 463 U.S. at 303.  Petitioner points to the fact that both he and the petitioner in *Solem* had:

15   (1) relatively minor triggering offenses; (2) similar criminal histories, including a number of

16   burglaries; and (3) lengthy sentences imposed under state recidivist statutes.

17         Notwithstanding some similarities between Foroutan's circumstances and those presented

18   in *Solem*, the Court is not persuaded that the two cases are "materially indistinguishable" as would

19   mandate grant of the writ.  Helm's triggering offense was uttering a "no account" check for $100,

20   punishable by up to 5 years in state prison, while his criminal history consisted of three convictions

21   for third-degree burglary; one conviction for obtaining money under false pretenses; one conviction

22   for grand larceny; and one conviction for third-offense driving while intoxicated.  *Solem*, 463 U.S.

23   at 279-80.  He was sentenced under South Dakota's recidivist statute to life imprisonment without

24   the possibility of parole.  *Id.*  While Foroutan's criminal history may resemble Helm's in some

25   respects, one key difference is that Helm was sentenced to life without the possibility of parole,

26   whereas Foroutan may be eligible for parole in 25 years.  The *Solem* Court specifically seized on

27   the unavailability of parole in distinguishing Helm from the petitioner in *Rummel*, whose

28   indeterminate life sentence had been upheld, noting that "Rummel was likely to have been eligible

United States District Court
For the Northern District of California

14

**United States District Court**
For the Northern District of California

1    for parole within 12 years of his initial confinement." *Id.* at 297 (footnote omitted).  Meanwhile, in

2    *Lockyer*, the Supreme Court distinguished *Solem* in upholding a three strikes sentence of 25 years

3    to life imprisonment for two petty theft convictions for theft of $153.54 worth of videotapes, where

4    the petitioner's prior convictions included two counts of misdemeanor theft, at least three counts of

5    residential burglary, and two counts of transportation of marijuana.  *See Lockyer*, 538 U.S. at 66-

6    67, 77.  In denying habeas relief, the Court reasoned that "[t]he facts here fall in between the facts

7    in *Rummel* and the facts in *Solem*[,] . . . [a]nd while this case resembles to some degree both

8    *Rummel* and *Solem*, it is not materially indistinguishable from either."  *Id.* at 74.

9        The facts of Foroutan's case fall in between the facts in *Rummel*, where the petitioner was

10   eligible for parole after 12 years of imprisonment, and the facts in *Lockyer*, where the petitioner

11   was eligible for parole after 50 years of imprisonment.  The Supreme Court denied habeas relief in

12   both *Rummel* and *Lockyer*.  Foroutan is eligible for parole after 25 years of imprisonment, in

13   contrast to the petitioner in *Solem*, who was never eligible for parole.  This Court cannot find that

14   Foroutan's facts are materially indistinguishable from the facts in *Solem*.  Accordingly, the fact that

15   the Court of Appeal reached a different decision than *Solem* does not render the Court of Appeal's

16   decision "contrary to" clearly established Supreme Court law.  *Williams*, 529 U.S. at 406.

17       Petitioner's second argument is that the Court of Appeal's decision was "contrary to" the

18   Supreme Court's clearly established rule that "no penalty is *per se* constitutional."  *Solem*, 463 U.S.

19   at 290.  Petitioner objects to the last sentence in the Court of Appeal's discussion of the Eighth

20   Amendment challenge, which states that "Foroutan's sentence will pass Eighth Amendment muster

21   as long as it was correctly imposed pursuant to our state's Penal Code."  Ex. 11 at 9.

22       The Court agrees that this last statement is incorrect.  The Supreme Court has certainly

23   never held that a sentence is constitutional simply because it is imposed pursuant to state law.  In

24   fact, it has said just the opposite.  A state legislature could "ma[k]e overtime parking a felony

25   punishable by life imprisonment," *Rummel*, 445 U.S. at 274 n.11, but the mere imprimatur of

26   legislative approval would not make such a punishment constitutional.  "[A] single day in prison

27   may be unconstitutional in some circumstances," even if such imprisonment is mandated by state

28   law.  *Solem*, 463 U.S. at 290.  The "substantial deference" that reviewing courts must give to

1    legislatures and sentencing trial courts does not absolve a reviewing court of its independent

2    constitutional duty to evaluate the merits of a petitioner's Eighth Amendment claim.  *Id.* (holding

3    unconstitutional a sentence imposed pursuant to South Dakota's recidivist statute).

4           Nevertheless, the Court does not find Petitioner's characterization of the Court of Appeal's

5    decision to be a fair one.  The Court of Appeal began its Eighth Amendment discussion with this

6    statement of law: "A punishment that is grossly disproportionate to the severity of the crime

7    violates the Eighth Amendment."  Ex. 11 at 9.  In a footnote, the Court of Appeal further

8    elaborated that the Eighth Amendment does not require strict proportionality between crime and

9    sentence, but instead prohibits only "extreme sentences that are grossly disproportionate to the

10   crime."  Ex. 11 at 8-9 n.6.  Moreover, the Court of Appeal rejected Foroutan's contention that the

11   court must apply the three-pronged analysis used in *Solem*, explaining that the Supreme Court had

12   since "discredited that analysis," and that "[i]n most cases, it will be unnecessary to compare

13   punishments within and without [sic] the jurisdiction; consideration of the gravity of the offense

14   and the harshness of the penalty alone will usually be sufficient to uphold a sentence."  *Id.* (citing

15   *Harmelin*, 501 U.S. at 1001, 1004-05 (Kennedy, J., concurring in part and concurring in

16   judgment)).  Finally, in its analysis, the Court of Appeal noted that "[t]he United States Supreme

17   Court has consistently upheld mandatory sentencing schemes for habitual offenders, including

18   California's Three Strikes law," citing *Lockyer*, 538 U.S. at 77 (2003); *Ewing*, 538 U.S. at 30-31

19   (plurality opinion); *Harmelin*, 501 U.S. at 994-95; *Rummel*, 445 U.S. at 284; and *Spencer v. Texas*,

20   385 U.S. 554, 567-69 (1967).

21          On this record, it is clear that the Court of Appeal correctly identified the gross

22   disproportionality rule, which the Supreme Court has held is "the only relevant clearly established

23   law" for AEDPA purposes.  *Lockyer*, 538 U.S. at 73.  The Court of Appeal's decision therefore did

24   not "appl[y] a rule that contradicts the governing law set forth in [Supreme Court] cases."

25   *Williams*, 529 U.S. at 405.  The statement in dispute is more fairly characterized as an application

26   of the correctly identified gross disproportionality rule than a pronouncement of the constitutional

27   rule itself.  This Court therefore turns next to whether the Court of Appeal's decision was an

28   "objectively unreasonable" application of Supreme Court law.

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**United States District Court**
For the Northern District of California

### 2. "Unreasonable Application of"

Gross disproportionality analysis begins by asking whether "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment); *see Ewing*, 538 U.S. at 28; *Gonzales*, 551 F.3d at 883.  In doing so, the Court must "weigh the criminal offense and the resulting penalty 'in light of the harm caused or threatened to the victim or to society, and the culpability of the offender.'"  *Gonzales*, 551 F.3d at 883-84 (quoting *Solem*, 463 U.S. at 292)).  "[O]nly in the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" does a court then need to compare the petitioner's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment).  Intrajurisdictional and interjurisdictional comparisons can "validate an initial judgment that a sentence is grossly disproportionate to a crime," but they are not otherwise required.  *Id.*

Here, Foroutan was sentenced to an indeterminate life sentence with a minimum imprisonment term of 25 years.  "That [Foroutan's] sentence is harsh is beyond any dispute." *Ramirez*, 365 F.3d at 767; *see Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006).  As the Ninth Circuit has explained, it appears that the only two more severe sentences available in California are life without the possibility of parole, and death.  *Ramirez*, 365 F.3d at 767.  At the same time, the Supreme Court has recognized that "we lack clear objective standards to distinguish between sentences for different terms of years."  *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment); *see also Solem*, 463 U.S. at 294 ("It is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not.").  While Foroutan's 25-year minimum sentence is longer than the 12-year minimum sentence upheld in *Rummel*, it is shorter than the 50-year minimum sentence upheld in *Lockyer*.  Both the Supreme Court and the Ninth Circuit have repeatedly upheld sentences identical to Foroutan's.  *See, e.g.*, *Ewing*, 538 U.S. at 30-31; *Taylor*, 460 F.3d at 1101-02.  Furthermore, unlike the sentence

17

invalidated in *Solem*, Foroutan's sentence does not wholly preclude the possibility of parole. *See Lockyer*, 538 U.S. at 74; *see also Rummel*, 445 U.S. at 280-81 (hinging holding, in part, on the availability of parole after twelve years); *Taylor*, 460 F.3d at 1098 (noting that petitioner's three strikes sentence of 25 years to life was "considerably less severe than the one invalidated in *Solem*").

The Court next considers the gravity of the offense Foroutan committed: felony possession of 0.03 grams of methamphetamine after having committed two prior serious felony convictions for residential burglaries. *See Ramirez*, 365 F.3d at 768 ("The question therefore is whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history."). Because Foroutan was sentenced not simply for his most recent possession offense but rather for being a recidivist, in weighing the gravity of his offense, the Court "'must place on the scales not only his current felony,' but also his criminal history." *Id.* (quoting *Ewing*, 538 U.S. at 29). "Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Ewing*, 538 U.S. at 29.

Foroutan argues that his triggering offense was a relatively minor one, as evidenced by the fact that the crime is a "wobbler," chargeable as either a misdemeanor or a felony, and by the fact that, absent the three strikes enhancement, the maximum sentence for the crime is three years. *See* Cal. Penal Code § 18. "That [the triggering offense] is a 'wobbler' under California law," however, "is of no moment," according to the Supreme Court. *Ewing*, 538 U.S. at 28; *see also Lockyer*, 538 U.S. at 67, 77 (upholding a Three Strikes sentence imposed for a wobbler triggering offense). Furthermore, California has a legitimate penological interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law," *Ewing*, 538 U.S. at 29, and therefore the maximum sentence for a lone possession offense is of only limited comparative value. *See Taylor*, 460 F.3d at 1100 n.9 ("[I]t avails Taylor nothing that he was given 25 years to life for a crime ordinarily deserving no more than three years").

Foroutan also makes much of the fact that neither his triggering offense nor his prior strikes involved violent crimes. "But the presence or absence of violence does not always affect the

18

**United States District Court**
For the Northern District of California

1    strength of society's interest in deterring a particular crime or in punishing a particular criminal."

2    *Rummel*, 445 U.S. at 275.  With respect to Foroutan's possession offense, the Ninth Circuit has

3    specifically discredited the argument that "any offense having an immediate victim is more serious

4    than a drug-possession offense."  *Taylor*, 460 F.3d at 1098.  In *Taylor*, the Ninth Circuit upheld a

5    sentence of 25 years to life imprisonment imposed under California's three strikes law for a

6    triggering offense of possession of 0.036 grams of cocaine, observing that "it is not obvious to us

7    that Andrade's depriving a K-Mart of $153.54 worth of videotapes is graver than Taylor's

8    possession of 36 milligrams of cocaine."  *Id.* (comparing Taylor's triggering offense to the

9    triggering offense in *Lockyer*).  The Ninth Circuit further reasoned that, "[m]ore fundamentally, . . .

10   [California] [is] entitled to the view that '[p]ossession, use and distribution of illegal drugs

11   represent one of the greatest problems affecting the health and welfare of our population.'"  *Id.*

12   (quoting *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and concurring in

13   judgment)).

14          Furthermore, while Foroutan's criminal history may be devoid of violent crimes, the

15   seriousness of his past crimes cannot be denied.  As a juvenile, Foroutan was declared a ward of

16   the state at the age of 16 for a burglary involving a claimed loss of over $50,000.  As an adult,

17   Foroutan's first strike was a guilty plea conviction for three counts of first degree residential

18   burglary involving claimed losses of over $120,000, which he entered in exchange for a *Harvey*

19   waiver dismissal of three other burglary and attempted burglary charges involving claimed losses

20   of over $5,000.  While on probation for his first conviction, Foroutan incurred a second strike for

21   another count of residential burglary, for which he was sentenced to nine years in state prison.

22   First degree burglary qualifies as a "serious" crime under the Three Strikes law, *see* Cal. Penal

23   Code § 1192.7(c)(18), and courts must give deference to California's "rational legislative

24   judgment" to punish more harshly repeat offenders who have committed not only violent but also

25   "serious" felonies as defined under state law.  *Ewing*, 538 U.S. at 30.

26          Foroutan's third and most recent strike was again committed while on probation,

27   evidencing a pattern of recidivism.  While Foroutan's third strike was not a property crime,

28   Foroutan himself admitted at the time of his first residential burglary conviction that his drug

1   addiction played a role in driving him to commit burglaries.  As the Court of Appeal found,

2   "[Foroutan's] more recent conviction for possession of methamphetamine suggests that the same

3   drug abuse that led him to commit one or more burglaries a decade earlier was still at work in his

4   life in 2000.  Foroutan's drug abuse, his lack of success after participating in a residential treatment

5   program and his poor performance on probation in the past suggest that he falls within the spirit of

6   the Three Strikes sentencing scheme."  Ex. 11 at 5-6, 10.  Further, in rejecting Petitioner's claim

7   under the California Constitutional's ban on all cruel *or* unusual punishment, the Court of Appeal

8   "f[ound] a drug-related connection between the current offense for possession of

9   methamphetamine and his prior convictions for burglaries committed during a time when drugs

10  held a significant sway over his life."  Ex. 11 at 10.  The Court of Appeal's factual findings of a

11  drug-related connection are "presumed to be correct," in the absence of "clear and convincing"

12  evidence to the contrary, of which there is none here.  28 U.S.C. § 2254(e)(1); *see Nunes v.*

13  *Ramirez-Palmer*, 485 F.3d 432, 440 (9th Cir. 2007).

14          Although Foroutan's criminal history is not as lengthy or severe as some others who have

15  been denied habeas relief, nor is it obviously less serious than others whose equally harsh sentences

16  have been upheld under proportionality review.  *See Lockyer*, 538 U.S. at 66-67; *Rios v. Garcia*,

17  390 F.3d 1082, 1086 (9th Cir. 2004) (upholding a 25 years to life sentence imposed for felony petty

18  theft with a prior theft-related conviction, where the petitioner's criminal history consisted of two

19  counts of robbery in which the only threat of violence was his cohort's use of a knife).  In short, in

20  light of the facts of Foroutan's criminal history and comparison to other individuals whose Three

21  Strikes sentences have been upheld, the Court of Appeal's failure to conclude that "a threshold

22  comparison of the crime committed and the sentence imposed leads to an inference of gross

23  disproportionality" was not objectively unreasonable.  *Harmelin*, 501 U.S. at 1005 (Kennedy, J.,

24  concurring in part and concurring in judgment).  Accordingly, the Court need not perform any

25  intra- or inter-jurisdictional comparisons.  *See Nunes*, 485 F.3d at 439 ("[T]he [*Lockyer*] Court

26  made no mention of any constitutional imperative requiring that courts make the various intra- and

27  inter-jurisdictional comparison recommended by the *Solem* court.").

28

United States District Court
For the Northern District of California

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        The seriousness of Foroutan's residential burglary convictions and the link between

Foroutan's drug abuse and his property crimes distinguish this case from *Ramirez v. Castro*, 365

F.3d 755 (9th Cir. 2004); *Gonzales v. Duncan*, 551 F.3d 875 (9th Cir. 2008); and *Reyes v. Brown*,

399 F.3d 964 (9th Cir. 2005), on which Petitioner relies.[7]  In *Ramirez*, the Ninth Circuit held that a

Three Strikes sentence of 25 years to life was grossly disproportionate where the petitioner's

triggering offense was one count of petty theft (stealing a $199 VCR) with a prior theft-related

conviction, and his only prior convictions were two counts of second degree robbery stemming

from earlier shoplifting charges, for which his total sentence was one year in county jail and three

years probation.  *Ramirez*, 365 F.3d at 757, 768.  While Foroutan focuses on the *Ramirez* Court's

observation that the second-degree robberies, while defined as "serious," were "nonviolent in

nature," *id.* at 768, another important factor in the *Ramirez* Court's analysis was the fact "[b]efore

receiving a sentence of 25 years to life in state prison, Ramirez had spent one period of six months

and 20 days in county jail; he had never been sentenced to or served time in state prison," *id.* at

769.  Unlike Ramirez, Foroutan was sentenced to a nine year prison term for his second residential

burglary conviction,[8] and he spent five years in state prison before being paroled.  Furthermore,

while Ramirez's two prior strikes were incurred simultaneously and were somewhat remote in time

from the third, each of Foroutan's successive convictions occurred while Foroutan was on parole,

adding to the seriousness of his pattern of recidivism.

        The Ninth Circuit also granted habeas relief in *Gonzales*, but that case, too, is

distinguishable from the facts presented here, for two reasons.  First, the triggering offense in

*Gonzales* was the petitioner's failure to update his annual sex offender registration within five

working days of his birthday, in violation of California Penal Code § 290(a)(1)(D).  The Ninth

Circuit held that Gonzales' triggering crime was even more passive than the crime of uttering a no-

_____

[7] Petitioner also relies on *Mack v. Dexter*, 365 Fed. App'x 822 (9th Cir. 2010), in support of his petition, but *Mack* is an unpublished memorandum disposition and thus not controlling precedent. The Court therefore declines to discuss or compare Foroutan's circumstances to the bare facts available in *Mack*.

[8] Foroutan also received a suspended sentence and five years probation for his first conviction for three counts of felony residential burglary.  Probation was later, and Foroutan was sentenced to a term of eight years and eight months for his first conviction, to run concurrently with the nine year sentence imposed for the second conviction.

21

account check at issue in *Solem* because "failure to update his sex offender registration annually is a crime of omission, which is by definition *the* most passive felony a person could commit, and one that California courts have characterized as a 'harmless, and technical violation of the registration law.'" *Gonzalez*, 551 F.3d at 890 (quoting *People v. Carmony*, 127 Cal. App. 4th 1066, 1077 (2005)). By contrast, the Ninth Circuit in *Taylor* held that a drug possession offense, like Foroutan's triggering offense, is *not* an entirely passive, victimless crime. *See Taylor*, 460 F.3d at 1099. Second, the Ninth Circuit in *Gonzales* was "unable to discern any rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender," and thus was unable to conclude that Gonzalez reasonably fell within the spirit of the Three Strikes law to punish recidivist offenders. *Gonzalez*, 551 F.3d at 887. The Court noted that "in the four Supreme Court decisions upholding sentences for a term of years, the defendant's criminal history was directly related to the triggering offense, evincing a clear pattern of recidivism," *id.* at 890, whereas "Gonzalez's present offense does not reveal any propensity to recidivate," *id.* at 887. Here, by contrast, the Court of Appeal found that Foroutan's third strike of drug possession was related to his prior criminal history because his prior residential burglaries had admittedly been committed during a time period when he was abusing drugs, evidencing a clear pattern of recidivism. *See* Ex. 11 at 5-6. This factor, too, makes this case distinguishable from *Gonzales*.

Petitioner also relies on *Reyes* for the proposition that habeas relief should be granted for a petitioner whose criminal history consists of only minor offenses not involving acts of violence. In *Reyes*, the Ninth Circuit reversed a denial of habeas and remanded for a factual determination of whether the petitioner's armed robbery conviction involved actual violence, holding that "but for [petitioner's] armed robbery conviction, [he] would appear to have a plausible case for relief under *Ramirez*." 399 F.3d at 969. There, however, the petitioner's triggering offense was perjury for misrepresentations on a California Department of Motor Vehicles driver's license application, and his only other prior strike was a residential burglary committed when he was seventeen, for which he was sentenced to two years at the California Youth Academy and paroled after one year. The Ninth Circuit clarified in a footnote that, based on the scant details in the record, Reyes' residential

22

United States District Court
For the Northern District of California

1  burglary conviction resulted when he "was 'at some guy's house with some friends and . . . walked

2  out with a radio that didn't belong to' him." *Id.* at 968 n.5 (quoting the trial transcript).  The Ninth

3  Circuit reasoned that "Reyes' age and the fact that the offense appeared to be nonviolent . . . weigh

4  against finding this to be a 'grave' offense sufficient to justify his twenty-six years to life

5  sentence." *Id.* at 968.  Again, *Reyes* is distinguishable from this case.  Foroutan was convicted at

6  the age of twenty-one of a series of first degree residential burglaries involving claimed losses of

7  over $120,000, and the record shows that he used at least some force in breaking into the

8  residences and that he ransacked at least some of the homes.  *See* CT 101-06.  His theft of tens of

9  thousands of dollars worth of gold, jewelry, furs, electronics, and golf clubs from multiple homes is

10  considerably more serious than "walk[ing] out with a radio."  *Reyes*, 399 F.3d at 968 n.5.  Whether

11  Foroutan's burglaries involved actual violence to another person, therefore, is a less significant

12  factor in weighing the seriousness of his crimes.

13  　　　　In short, that Foroutan's triggering offense did not directly involve violence or a specific

14  victim does not necessarily preclude a severe sentence in the context of proportionality review.  *See*

15  *Rummel*, 445 U.S. at 275 (rejecting petitioner's attempt to minimize the gravity of his crime of

16  taking $120 by false pretense).  While the Ninth Circuit has noted that the use of violence in

17  commission of the crimes is a relevant factor in proportionality analysis, it is not clearly established

18  Supreme Court law that the absence of violence in a defendant's criminal history automatically

19  renders a lengthy term of imprisonment cruel and unusual.  In light of all the circumstances of

20  Foroutan's triggering offense and criminal history, the Court cannot say that it was objectively

21  unreasonable for the Court of Appeal to conclude that Foroutan's sentence fell safely within the

22  bounds of the Eighth Amendment.

23  　　　　Notwithstanding the foregoing, Foroutan contends that he is entitled to habeas relief

24  because the Court of Appeal neglected to conduct a fact specific inquiry into the constitutionality

25  of his sentence as weighed against his crimes.  Pet. at 21.  Although this Court agrees that the Court

26  of Appeal's discussion of Foroutan's Eighth Amendment claim was perhaps too cursory, the Court

27  is not convinced that the Court of Appeal failed to "perform[] the clearly established objective

28

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

comparison between [Foroutan's] sentence and crimes" in an unreasonable way.  *Norris*, 622 F.3d at 1290.

First, it was not objectively unreasonable for the Court of Appeal in this case to believe that, under *Lockyer*, it was sufficient simply to compare Foroutan's sentence and crime to those of others whose sentences have been upheld, without discussing in detail the individualized facts of Foroutan's case.  *See Nunes*, 485 F.3d at 439 (that the state appellate court reasonably applied the proportionality principle to the petitioner's case "is evident when one compares the facts of this case with the facts of other cases in which courts have applied this principle").  *Lockyer* itself contained no individualized discussion of the petitioner's particular criminal history as weighed against his sentence of two consecutive terms of 25 years to life imprisonment.  Rather, the *Lockyer* Court simply explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle – the 'precise contours' of which 'are unclear,'" and concluded that "it was not objectively unreasonable for the California Court of Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence."  538 U.S. at 76 (quoting *Harmelin*, 501 U.S. at 998 (Kennedy, J., concurring in part and concurring in judgment)).

After identifying the correct legal principle of gross disproportionality, the Court of Appeal in this case correctly noted, "it is exceptionally rare for a noncapital punishment to fail the federal proportionality test.  The United States Supreme Court has consistently upheld mandatory sentencing schemes for habitual offenders, including California's Three Strikes law."  Ex. 11 at 9 (internal citations omitted).  The Court of Appeal in this case went on to conclude that the Supreme Court "routinely upholds lengthy sentences for less serious offenses."  *Id.*  Specifically, the Court of Appeal noted that in *Lockyer*, the Supreme Court upheld two consecutive 25 years to life terms imposed under California's Three Strikes law following a third strike petty theft conviction, and that in *Ewing*, the Supreme Court upheld a 25 years to life sentence imposed under California's Three Strikes law for theft of three golf clubs.  *Id.*  Applying this canon of law to Foroutan's case, the Court of Appeal concluded that Foroutan's sentence did not violate the Eighth Amendment. Although the Court of Appeal did not engage in a lengthy discussion of the severity of Foroutan's

24

25 years to life sentence or of the seriousness of Foroutan's crimes, the Court of Appeal's comparison of Foroutan's case to *Lockyer* and *Ewing*, in which equal or longer sentences were upheld for "less serious offenses," is evidence of the requisite weighing and balancing.  This Court cannot say that it was objectively unreasonable for the Court of Appeal in this case to believe that this analysis was sufficient under the Eighth Amendment, given the Supreme Court's reminder in *Lockyer* that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 72-73 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment)).

Second, even if the Court of Appeal's failure to discuss the specific facts of Foroutan's criminal history and sentence in connection with his Eighth Amendment claim was erroneous, the requisite consideration of Foroutan's individualized circumstances can be found in other parts of the Court of Appeal's decision, and thus the error was harmless.  For example, in rejecting Foroutan's cruel or unusual punishment claim under the California Constitution, the Court of Appeal "look[ed] at the abstract nature of the offense, the nature of the offender, and the circumstances of the offense committed," taking stock of relevant factors such as "the perpetrator's age, criminal background, state of mind and motive; the manner in which he or she committed the crimes; the consequences of those acts; and the danger that he or she poses to society."  Ex. 11 at 10 (citations omitted).  The Court of Appeal rejected Foroutan's efforts to minimize the seriousness of his crimes, which included arguments that "his possession offense is extremely minor with little impact on society," his prior convictions are "nonviolent, remote in time and unconnected to his current conviction for possession of methamphetamine," and that "he poses no threat to society." *Id.*  In doing so, the Court of Appeal "f[ound] a drug-related connection between the current offense for possession of methamphetamine and his prior convictions for burglaries committed during a time when drugs held a significant sway over his life."  *Id.*  The Court of Appeal also noted the "significant societal consequences of the personal use of illegal drugs."  *Id.* (citing *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring in part and concurring in judgment)).  Earlier

25

**United States District Court**
For the Northern District of California

1  in the decision, in affirming the trial court's denial of Petitioner's motion to strike one of his prior

2  convictions, the Court of Appeal also explained that Foroutan continued to abuse drugs while on

3  probation, and "[h]is more recent conviction for possession of methamphetamine suggests that the

4  same drug abuse that led him to commit one or more burglaries a decade earlier was still at work in

5  his life in 2000.  Foroutan's drug abuse, his lack of success after participating in a residential

6  treatment program and his poor performance on probation in the past suggest that he falls within

7  the spirit of the Three Strikes sentencing scheme."  Ex. 11 at 5-6.  In addition, the Court of Appeal

8  rejected Foroutan's suggestion that his sentence of 25 years to life was imposed for simple

9  possession of a small amount of methamphetamine.  The Court of Appeal clarified that "Foroutan

10  was sentenced as an habitual criminal," and explained that "[t]he commission of multiple felonies

11  poses a danger to society justifying the imposition of longer sentences for subsequent offenses."

12  Ex. 11 at 11.  All of this is highly relevant to an Eighth Amendment proportionality analysis.  To

13  pretend that this discussion of the seriousness of Foroutan's criminal history as compared to the

14  severity of Foroutan's sentence did not inform the Court of Appeal's Eighth Amendment

15  proportionality analysis, simply because it was written in a different section of the court's opinion,

16  would be to elevate form over substance.  This Court does not believe AEDPA authorizes a grant

17  of habeas relief on such grounds.

18          Viewing the record as a whole in light of the applicable Supreme Court precedents, as

19  further interpreted by the Ninth Circuit, this Court cannot conclude that the Court of Appeal's

20  decision was an objectively unreasonable application of clearly established Eighth Amendment

21  law.  Even if this Court would reach a different conclusion on de novo review, it cannot say this is

22  one of those "exceedingly rare and extreme case[s]" in which the sentence imposed constitutes

23  cruel and unusual punishment.  *Lockyer*, 538 U.S. at 73 (quotation marks and citation omitted); *see*

24  *Fryman*, 2010 WL 145010, at *12 ("The controlling case law makes it exceedingly difficult to

25  prevail in a federal habeas court on an Eighth Amendment challenge to a sentence under a

26  recidivism statute.").

27  **IV.  CONCLUSION**

28          For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

26

**IT IS SO ORDERED.**

Dated: April 9, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No.: 10-CV-02411-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS